# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

Nos. 01-1421, 01-1636, 01-1638

_____

| | | |
|---|---|---|
| First National Bank of Omaha, | * | |
| | * | |
| Appellant/Cross-Appellee, | * | Appeal from the United States |
| | * | District Court for the District |
| v. | * | of Nebraska |
| | * | |
| Three Dimension Systems | * | |
| Products, Inc., | * | |
| | * | |
| Appellee/Cross-Appellant. | * | |

_____

Submitted: September 10, 2001
Filed:  May 13, 2002

_____

Before MORRIS S. ARNOLD and BRIGHT, Circuit Judges, and KYLE, District Judge.[1]

KYLE, District Judge.

_____

[1] The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

In 1996 and 1997, the First National Bank of Omaha (the Bank) and Three Dimension Systems Products, Inc. (3D) entered into a series of written agreements by which 3D was to develop, customize, and deliver to the Bank three software computer programs intended for the use of the Bank's affiliates, subsidiaries and clients. Two of the programs, known as PPS and Teller, were successfully installed by 3D at the Bank and are not the subject of the litigation below.

It is the third program, known as Platform, which is at the heart of the lawsuit. Following 3D's delivery of the first stage (Stage I) of the Platform program to the Bank, a dispute concerning contract performance arose between the parties. In this litigation, the Bank claimed that 3D had breached the contract by (a) refusing to "performance test" that part of the program, Stage I, which had been delivered and (b) demanding the payment of $250,000 as a condition of its continued performance. 3D denied any breach and counterclaimed for breach of contract by the Bank, copyright infringement, and conversion. Among the defenses asserted by 3D was the Bank's failure to give 3D the contractual opportunity to cure the alleged breach.

Although there were several issues between the parties, each of which was the subject of extensive testimony during the two-week jury trial, the heart of this appeal is whether there was sufficient evidence to support the Bank's assertion, and the jury's determination, that 3D's conduct constituted an anticipatory breach of the contract justifying the Bank's decision to terminate the contract and excusing the Bank from giving 3D the opportunity to cure the conduct which constituted the breach.

Following the jury's verdict, in which it found that 3D had anticipatorily breached the contract, the District Court determined that "given the evidence presented at trial, no reasonable jury could have arrived at the conclusion that 3D had anticipatorily breached the contract with [the Bank]." Accordingly, it granted 3D's motion for judgment as a matter of law, which had been taken under advisement at

2

the close of all the evidence. The Bank now appeals from that determination. Because our review of the entire record satisfies us that there was sufficient evidence to support the jury's finding that 3D had anticipatorily breached the contract, we reverse and reinstate the jury's verdict.

Before reviewing the evidentiary bases for the jury's determination, it is well to understand what is <u>not</u> at issue in this appeal. The parties, and the District Court, agreed that Arizona law governs the contract and all issues relating to anticipatory breach. Under Arizona law, anticipatory breach may be proven by evidence that a party has "expressed a positive and unequivocal manifestation that [it would] not render the required performance when it [was] due." <u>Oldenburger v. Del E. Webb Dev. Co.</u>, 765 P.2d 531, 533 (Ariz. Ct. App. 1988). Not only do the parties agree on the foregoing principle of law, but they also agree that the Court's instructions to the jury accurately reflected that legal principle. The sole disagreement is whether there was sufficient evidence to support the jury's factual determination.

We review <u>de novo</u> the District Court's grant of judgment as a matter of law and view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party–the Bank. <u>See</u> <u>Gardner v. Buerger</u>, 82 F.3d 248, 251 (8th Cir. 1996).

As this Court has recently stated

[T]he law places a high standard on overturning a jury verdict because of the danger that the jury's rightful province will be invaded when judgment as a matter of law is misused. Where conflicting inferences reasonably can be drawn from the evidence, it is the role of the jury, not the court, to determine which inference shall be drawn. Only where "all of the evidence points in one direction and is susceptible to no reasonable interpretation supporting the jury

3

verdict" should the grant of a motion for judgment as a matter of law be affirmed. Thus, it is improper to overturn a jury verdict unless, after giving the nonmoving party the benefit of all reasonable inferences and resolving all conflicts in the evidence in the nonmoving party's favor, there still exists "*a complete absence of probative facts* to support the conclusion reached so that no reasonable juror could have found for the nonmoving party."

Hunt v. Nebraska Pub. Power Dist., 282 F.3d 1021, 1029 (8th Cir. 2002) (citations omitted and emphasis in original).

To establish anticipatory breach of a contract under Arizona law, it was necessary for the Bank to prove (1) an unequivocal intent on the part of 3D not to perform as promised and (2) its own willingness and ability to perform the contract in the absence of the anticipatory breach. The Bank asserted that 3D had refused to give the required support for Stage I and had refused to continue performing under the contract unless and until the Bank paid an additional $250,000 invoice, which the Bank contended was not called for by the contract. To support these claims, the Bank presented testimony that 3D's President had stated to the Bank that he "wasn't going to fix any errors" in Stage I, and that "he might consider fixing these errors after stage three or four was delivered." There was also evidence in the form of a written communication from 3D to the Bank that there would be "no support of stage one deliverables after Friday 10/30/98, (10 days from delivery of stage 1)." To "support" a "deliverable" means to correct errors in the product which has been delivered. The Bank also presented testimony that correction of errors in Stage I was essential to the moving on to subsequent stages called for by the contract between the parties. There was also testimony that 3D's President stated to the Bank, with respect to a $250,000 invoice–"if you are not going to pay [the invoice], I'm not moving on to stage two development of this project." The Bank introduced into evidence a written communication dated November 3, 1998, stating that failure to pay this outstanding

4

invoice would "probably cause a delay to the delivery of stage 2." Another verbal communication from 3D's President stated that in order to bring the project to a conclusion, the Bank would have to pay the $250,000 invoice. There was also evidence from which the jury could conclude that the $250,000 payment was not authorized by the contract between the parties.

In response to the foregoing, 3D argued and presented testimony to the effect that the written and verbal communication relating to Stage I errors did not state, nor could they be reasonably construed as stating, that Stage I errors would never be corrected. Rather, they would be corrected in the later stages and that process would neither delay nor impede the completion of the project. 3D also denied that the payment of the $250,000 was ever made a condition of continued performance. At most, 3D claimed, it was a subject discussed by the parties.

The record shows sharp disagreement between the parties as to what was said, intended, and understood with respect to these two issues. Each was given wide latitude by the District Court to put before the jury evidence in support of its respective position. The jury was instructed in accordance with Arizona law and neither party had substantive objections to those instructions. The jury was asked, in effect, to resolve the conflicting testimony, and it did so.

We have made a thorough review of the entire record and are satisfied that the jury's determination that there was an anticipatory breach of the contract by 3D was supported by the evidence before it. It is not within the province of a trial court to replace a jury's reasonable findings with its own, but that appears to be what occurred here when the jury verdict was set aside. We recognize that this jury could have reached a different result–this was a close case–but the need to resolve factual issues in close cases is the very reason we have juries. Both parties had ample opportunity to present evidence on the issue of anticipatory breach. The jury resolved that issue

in favor of the Bank and we are satisfied that the decision has support in the record and should be allowed to stand.[2]

We therefore reverse the District Court's granting of judgment as a matter of law and reinstate the jury verdict in favor of the Bank on the claim of anticipatory breach of contract by 3D.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[2]The District Court also determined that the Bank had failed to comply with the contract provision requiring it to provide 3D with notice of default and an opportunity to cure. The Court had previously instructed the jury that "an anticipatory breach or repudiation by one party excuses the other party from having to give notice and an opportunity to cure . . . ." This instruction accurately reflects Arizona law, and was not objected to by either party. The jury's determination that there was an anticipatory breach by 3D relieved the Bank of having to give 3D notice of default and opportunity to cure. See United Calif. Bank v. Prudential Ins. Co., 681 P.2d 390, 435 (Ariz. Ct. App. 1983).