

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-27-2005

# Hui Ming Lin v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4446

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Hui Ming Lin v. Atty Gen USA" (2005). *2005 Decisions.* Paper 332.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/332

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-4446

HUI MING LIN,

Petitioner

v.

ALBERTO GONZALES, ATTORNEY GENERAL
OF THE UNITED STATES*

*Caption amended pursuant to Rule 43(c), Fed. R. App. P.

Respondent

On Petition for Review from an Order of the
Board of Immigration Appeals
(Agency No. A70 893 550)

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 18, 2005

BEFORE: SCIRICA, Chief Judge, VAN ANTWERPEN and COWEN, Circuit Judges

(Filed October 27, 2005)

OPINION

COWEN, Circuit Judge.

Petitioner Hui Ming Lin, a native of the Fuzhou region in the Fujian Province of China, petitions for review of an order of the Board of Immigration Appeals ("Board") which adopted and affirmed an Immigration Judge's ("IJ") decision to deny her applications for asylum and withholding of removal under the Immigration and Nationality Act, and relief under the Convention Against Torture ("CAT"). Petitioner specifically challenges the administrative findings of adverse credibility and failure to furnish adequate corroboration.[1] For the following reasons, we will deny the petition for review.

## I.

The Board's jurisdiction arose under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction to review the Board's final order of removal under 8 U.S.C. § 1252(a)(1). We do not review the IJ's rulings unless adopted by the Board. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n.2 (3d Cir. 2001). In this case, the Board adopted and affirmed the decision of the IJ pursuant to 8 C.F.R. § 1003.1(e)(5). Accordingly, the decisions of both the Board and IJ are before us on review. The administrative findings of fact, which

---

[1] In her petition's "Statement of the Issues," Petitioner seeks review of whether the Board abused its discretion in affirming without opinion the IJ's decision and in failing to consider arguments set forth in her appeal brief. We will not entertain this claim, as Petitioner fails to further mention it in her petition, let alone identify those arguments she deems the Board inappropriately failed to consider. *See Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993). In any event, the Board did not dispose of Petitioner's appeal under its affirmance-without-opinion regulations. Likewise, we will not address Petitioner's claim under the CAT, as she has failed to raise this issue in her petition to this Court. *See id.*

include determinations of asylum eligibility, are reviewed under the substantial evidence standard.  *See Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Senathirajah v. INS*, 157 F.3d 210, 216 (3d Cir. 1998) (internal quotation marks and citation omitted).  To reverse the administrative decision below, the reviewing court must find that the record "not only supports that conclusion, but compels it."  *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

II.

As we write only for the parties, we do not recite the factual background.  Where relevant, factual discussion occurs in connection with our legal analysis.

Petitioner claims that she experienced persecution on account of political opinion by virtue of her allegedly coerced abortion.  *See* 8 U.S.C. § 1101(a)(42)(B).[2]  In denying her applications for asylum, withholding of removal, and protection under the CAT, the IJ

---

[2]  8 U.S.C. § 1101(a)(42)(B) provides in pertinent part:

> For purposes of determination [of whether an alien qualifies as a "refugee"] under this chapter, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

3

found and the Board adopted and affirmed that Petitioner was incredible because she presented several material inconsistences within her testimony and between her testimony and written asylum application. This factual determination is supported by substantial evidence.

We must ascertain whether the adverse credibility finding was "appropriately based on inconsistent statements, contradictory evidence, and inherently improbable testimony . . . in view of the background evidence on country conditions." *In re S-M-J*, 21 I. & N. Dec. 722, 729 (BIA 1997). Adverse credibility findings cannot be based on speculation, conjecture, or personal opinion, but will be afforded substantial deference when grounded in evidence in the record and where the IJ relies upon specific, cogent reasons in reaching her decision. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 597 (3d Cir. 2003).

Petitioner provided strikingly different reasons for requesting asylum at various points in the administrative process. When questioned by the IJ as to why she was seeking asylum, Petitioner responded that she violated the Chinese Family Planning Policy, and explained that she was forced to undergo an abortion because she was unmarried and not of marrying age. She represented, however, that she first came to the United States approximately four years thereafter, on November 5, 1985, to escape the son of a local Chinese official who wanted to marry her and who was harassing her. She later asserted that she came to the United States to make a fresh start after breaking up

4

with her boyfriend, the father of the aborted fetus. Moreover, in her 1993 asylum application, Petitioner stated that she sought asylum for fear of being arrested as a result of her participation in the "demonstrations for freedom" in the spring of 1989. She failed to pursue this claim at her asylum interview and hearing before the IJ.

Petitioner also testified that she left the United States on November 27, 1996, to attend her mother's funeral in China. On cross-examination, the IJ noted that Petitioner contradicted herself, averring that she returned to China because her mother was dying, and she wanted to see her. The contradiction in Petitioner's testimony in this regard is relevant, as any voluntary return weakens her assertion that she fears persecution. The local official's son, said Petitioner, harassed her during this brief visit in China and raped her. Thus, Petitioner returned to the United States on December 20, 1996. The IJ observed that when asked on cross-examination why she neglected to tell the asylum officer that she had been raped, Petitioner responded that she was embarrassed, afraid, and had not told anyone about the rape. Yet Petitioner later testified that her father and sister knew of the rape.

Petitioner attested that, while in the United States, she was hospitalized for three months for stress and anxiety. The medical record, however, revealed that she was diagnosed and hospitalized for encephalitis, a non-mental, medical disorder. Indeed, as brought to light through Dr. Burstein's testimony, Petitioner had lied to him regarding this hospitalization, representing that she was hospitalized for a mental problem and refusing

5

to provide him with the hospitalization records despite his express request. The IJ opined that it was "obvious . . . [Petitioner] intentionally misinformed her own witness as to the reason she was hospitalized," in an attempt to "try[] to paint a picture of someone with mental problems to the Court and the best way she saw to sustain that premise [was] to tell her doctor, her psychologist, that she was hospitalized for mental problems for a rather attracted [sic] period of time when in fact that was not the case at all, when in fact she actually lied to her own witness." The IJ recognized that Petitioner's intentional misrepresentation to her own witness operated to further undermine her credibility before the court.

Finally, the IJ noted that although Petitioner claimed to fear problems if forced to return to China because she had left illegally, she obtained passports without any difficulty in the United States from the Chinese Consulate, notwithstanding this fact.

In addition to these material inconsistencies, the record discloses several other troubling omissions. For example, Petitioner failed to explain, despite being specifically asked on cross-examination, why she submitted a birth certificate issued in 1991 with an adult picture. Moreover, she did not explain why she did not have or could not obtain an affidavit from her father or sister to verify her claims.

These inconsistencies, contradictions, and omissions, which involved facts central to Petitioner's claims, undoubtedly constitute substantial evidence supporting the adverse

credibility finding of the Board and IJ. A reasonable fact-finder would not be compelled to conclude to the contrary.

We now address whether substantial evidence supports the finding of the IJ and Board that Petitioner failed to meet her burden of showing eligibility for the reliefs requested.

The IJ ruled and the Board affirmed that Petitioner failed to provide any reliable corroborative proof of her allegedly forced abortion. Although corroborative evidence is not required to meet the burden of showing eligibility for asylum, it becomes of paramount importance where, as here, the applicant is adjudged incredible. *See In re Y-B-*, 21 I. & N. Dec. 1136, 1139 (BIA 1998) ("[T]he weaker an alien's testimony, the greater the need for corroborative evidence."). This ruling is likewise supported by substantial evidence, as we agree that the documents submitted by Petitioner do not overcome the deficiencies in her credibility as to material issues. Petitioner presented an abortion certificate. If valid, this document would have corroborated her testimony that she had undergone an abortion. *See Liu v. Ashcroft*, 372 F.3d 529, 533 (3d Cir. 2004). As noted by the IJ, Petitioner's purported abortion certificate was inadmissible for failure to be certified pursuant to 8 C.F.R. § 287.6. As the certification requirement "is not an absolute rule of exclusion, and is not the only means of authenticating records before an immigration judge," *Liu*, 372 F.3d at 533, the IJ cited another reason that the document was not entitled to appreciable weight - the Department of State's warning regarding the

7

prevalence of falsified documents from the Fujian Province in China. The 1998 Country Profile states that documentation, in particular from Petitioner's home area, Fuzhou, and other areas in southeast China, "is subject to widespread fabrication and fraud." In any event, even if the IJ had accepted the abortion certificate into the record, it certainly does not constitute evidence of an *involuntary* abortion. On this point, Petitioner concedes that she has no documentary evidence to corroborate her claim that her abortion was coerced. Indeed, Petitioner's statement in her petition that a certificate of abortion is only provided when the abortion is voluntary, taken in conjunction with her submission of an abortion certificate, directly undercuts her testimony that her abortion was coerced.

In addition, the other so-called "corroborative" evidence submitted by Petitioner failed to sufficiently bolster her claim. As noted by the Board, Petitioner's first witness, Dr. Aird, an expert on China's family planning policy, actually undermined Petitioner's documentary evidence by testifying that despite having seen a "great many" of family planning documents, he never came across an "introduction letter" from a birth control committee, like the one submitted by Petitioner. That the State Department has cautioned about the veracity of documents coming from Petitioner's home region further renders the authenticity of this document suspect. In addition, Petitioner's second witness, Dr. Burstein, acknowledged that Petitioner had previously lied to him, as described above.

No reasonable factfinder would be compelled to conclude that the Board and IJ erred in finding that Petitioner failed to sufficiently corroborate her claim, given her

8

failure to furnish reliable evidentiary support. This remains true despite Petitioner's argument that, contrary to the IJ's opinion, her descriptions of her forced abortion are consistent with the general background reports on China's population control policy. The background country reports merely confirm that China forbids unmarried couples from having children if they have not reached the appropriate marriage age and have not been officially married under Chinese law. These reports, however, indicate that the Chinese policy most heavily affects the urban population, although forced abortions still occur in more remote areas.

## III.

In light of the appropriate adverse credibility determination of the Board and IJ, and Petitioner's failure to substantiate her claims with corroborative proof, substantial evidence supports the finding that Petitioner did not satisfy her burden of establishing eligibility for asylum or withholding of removal.

For the foregoing reasons, the petition for review will be denied.