

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-14-2007

# Williams v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3537

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Williams v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1484.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1484

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-3537

———

CAVELL WILLIAMS,

*Petitioner*

v.

ATTORNEY GENERAL
OF THE UNITED STATES,

*Respondent*

———

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
BIA No. A39-748-902
(Honorable Walter A. Durling, Immigration Judge)

Initially Docketed as an Appeal from EDPA No. 05-cv-01789
Prior to the Enactment of the Real ID Act of 2005

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 13, 2007

Before: FUENTES, VAN ANTWERPEN, and SILER*, <u>Circuit Judges</u>.

(Filed March 14, 2007)

———

OPINION OF THE COURT

———

_____

* The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth
Circuit, sitting by designation.

VAN ANTWERPEN, *Circuit Judge.*

Petitioner Cavell Williams, a native and citizen of Jamaica, seeks review of the March 24, 2005, Order of the Board of Immigration Appeals ("BIA") that affirmed without opinion the Immigration Judge's ("IJ") denial of his application for relief. We have jurisdiction to review the petition pursuant to 8 U.S.C. § 1252(a), and for the reasons set forth below, we will deny the petition.

I.

Because we write solely for the benefit of the parties, we will set forth only those facts necessary to our analysis.

Williams was admitted to the United States as a lawful permanent resident in September 1995. In 1999, he was arrested and pled guilty to a drug-trafficking offense that carried a 33-month sentence. Williams served his sentence and was released from prison. In 2002, less than two years after his release, he was again arrested, convicted, and imprisoned for another drug-related crime. While in prison, on June 28, 2004, Williams received a Notice to Appear from the Department of Homeland Security charging him with removability based on his violation of federal drug laws. In response to the removal charge, Williams filed an application for relief under the Convention Against Torture.

On September 29, 2004, Williams appeared before the Immigration Court and testified to the following. Williams' involvement with drug-trafficking stemmed from his relationship with Charles Graham, a fellow Jamaican and childhood friend. Graham ran a

1

drug distribution network that smuggled drugs into Arizona from Mexico and then forwarded those drugs to New York for sale. Williams was a "runner" for Graham, delivering money and overseeing the packaging and shipping of drugs. In 1999, after his arrest, Williams assisted federal prosecutors in their investigation of Graham's network, directly contravening instructions from Graham to "keep quiet." As a result of his providing assistance to the government, Williams fears that Graham, who was convicted and later removed to Jamaica, will kill Williams upon his return to his native land. In addition, he fears being murdered by a division of the Jamaican police called the Crime Management Unit based on stories he has heard from friends and family in Jamaica. Williams further believes that no one can protect him from Graham or the Crime Management Unit, and that he cannot effectively hide from them.

The IJ who presided over Williams' hearing denied his petition for deferral of removal pursuant to the Convention Against Torture. The IJ acknowledged the threat posed by Graham and his associates, but found no evidence indicating that the Crime Management Unit or any other organ of the Jamaican government would directly torture Williams, "acquiesce" to his torture, or "refrain from intervening to prevent his torture" by non-government actors. App. at 33. In support of this finding, the IJ cited the Attorney General's decision in *Matter of Y-L-, A-G-, R-S-R*, and particularly the portion of this decision regarding Jamaican petitioner A-G-. 23 I. & N. Dec. 270, 2002 WL 358818 (A.G. 2002) (explaining "[a]lthough there are indications that corruption and brutality

2

affect some elements of Jamaican law enforcement, the national government has undertaken substantial efforts at reform"). The IJ found the situation of A-G- and Williams to be very similar—both were convicted of drug crimes, assisted the government, and feared being killed by their former associates—and concurred with the Attorney General's analysis that the Jamaican government would not approve of the torture of deportees. Based on this analysis, he found Williams failed to prove it was more likely than not that he would be tortured with the acquiescence of a public official. On March 24, 2005, the BIA affirmed the IJ's decision without opinion. On April 17, 2005, Williams filed a Petition for Habeas Corpus Relief and a Motion to Stay Removal. On April 20, 2005, a district court judge granted the stay. For reasons that the parties dispute, despite the valid stay, the Department of Homeland Security removed Williams to Jamaica on April 23, 2005. On July 27, 2005, the District Court transferred the petition to this Court to be treated as a petition for review under the Real ID Act of 2005, Pub.L. 109-13.

## II.

"When the BIA affirms an IJ without opinion, we review the IJ's opinion..." *Butt v. Gonzales*, 429 F.3d 430, 433 (3d Cir. 2005) (internal quotation and citation omitted). Because Williams is a twice-convicted felon, our review is limited to "constitutional

3

claims or questions of law."[1] 8 U.S.C. § 1252(a)(2)(D). That is, "we are limited to 'pure questions of law' and to 'issues of application of law to fact, where the facts are undisputed and not the subject of challenge.'" *Kamara v. Attorney General*, 420 F.3d 202, 211 (3d Cir. 2005) (internal citations omitted). "[F]actual or discretionary determinations continue to fall outside [our] jurisdiction." *Sukwanputra v. Gonzales*, 434 F.3d 627, 634 (3d Cir. 2006).

## III.

In his petition for review, Williams challenges the removal decision on three grounds. First, he claims the IJ's denial of his petition for relief under the Convention Against Torture was the result of the IJ making a number of errors, including his applying the wrong standard and not considering Williams' specific personal circumstances. Second, he claims he is not subject to removal because he is a national of the United States. Finally, he asserts his removal is barred by the "state-created danger exception."

### A. The Torture Claim

Williams claims the IJ erred in analyzing his petition for relief under the Convention Against Torture. Primarily, he claims the IJ applied the wrong standard to his claim, failed to give proper consideration to his individual circumstances, and ignored

---

[1] Prior to the passage of the REAL ID Act on May 11, 2005, we would not have had jurisdiction to review Williams' claims because he is an alien who was removed due to convictions for prior aggravated felonies. *See* 8 U.S.C. § 1252(a)(2)(C); *Kamara v. Attorney General*, 420 F.3d 202, 209 (3d Cir. 2005).

evidence showing that it is more likely than not that the Jamaican government will acquiesce to his torture. For the reasons described below, we reject Williams' claims.

To establish a claim for protection under the Convention Against Torture, the applicant must meet a two-part test. First, he must show it is "more likely than not" that he will be tortured if removed to the proposed country. 8 C.F.R. § 208.16(c)(2). In assessing the probability of the applicant being tortured, the following factors are relevant: (1) "evidence of past torture inflicted upon the applicant;" (2) "evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;" and (3) "evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable." 8 C.F.R. § 208.16(c)(3)(i)-(iii).

Second, he must show the torture he fears will be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Silva-Rengifo v. Attorney General*, 473 F.3d 58, 64 (3d Cir. 2007) (quoting 8 C.F.R. § 1208.18(a)(7)). Actual knowledge by the government is not required, and an applicant may satisfy his burden by showing that "the government in question is *willfully blind* to such activities." *Id*. (emphasis added).

Williams' argument with respect to his Convention Against Torture claim is poorly

5

organized. For clarity's sake, we have attempted to distill the crucial points from his brief, organizing his arguments into seven contentions. We address each of these contentions below.

First, Williams seems to argue that because the IJ found his testimony with respect to his fear of Charles Graham and the Crime Management Unit credible, he necessarily met his burden of proof. Credible testimony by the petitioner, however, is not dispositive on the issue of whether torture is more likely than not to occur. As 8 C.F.R. § 208.16(c)(2) explains, "[t]he testimony of the applicant, if credible, *may be sufficient* to sustain the burden of proof without corroboration." (emphasis added). However, "[s]aying that something may be enough is not the same as saying that it is always enough; in fact, the most natural reading of the word 'may' in this context is that credible testimony is neither per se sufficient nor per se insufficient." *Abdulai v. Ashcroft*, 239 F.3d 542, 552 (3d Cir. 2001). Here, the IJ found Williams' fear of Charles Graham and his associates and the Crime Management Unit was sincere. That is, he believed Williams truly feared being harmed by Graham or the police upon returning. He further believed Williams had good reason to fear retribution by Graham. Based on other evidence, however, he did not believe Williams had good reason to fear the Crime Management Unit. Accordingly, the IJ did not commit a legal error by concluding that Williams, though credible, did not meet his burden of proof.

Second, Williams argues the IJ applied the incorrect legal standard in evaluating

whether the government would acquiesce to Williams' torture. This claim is based on the following statements in the IJ's decision: "Respondent's counsel indicated that there are vigilante organizations operating with impunity by the Jamaican government . . . and certainly the background evidence suggest[s] that is certainly accurate. However, this is not a *de facto government agency* out of control on the streets of Jamaica." App. at 34 (emphasis added). Williams claims this statement is evidence that the IJ applied an overly restrictive standard to his claim, requiring him to show torture at the hands of a "de facto government agency" instead of simply "willful blindness" to torture on the part of the government. We disagree. While this isolated comment on the part of the IJ may support Williams' conclusion, the record in its entirety demonstrates the IJ understood the standard he was to apply. The IJ specifically found no evidence that the Jamaican government "would be aware of [Williams'] likely torture and refuse[] or refrain[] from intervening to prevent [it]." App. at 33. In addition, in supporting his finding, the IJ adopts the Attorney General's decision with respect to petitioner A-G- in *Matter of Y-L-, A-G-, R-S-R*. In this decision, the Attorney General specifically applies a standard of "willful acceptance" on the part of the government and finds Jamaica does not "approve or 'willfully accept' atrocities committed against persons in [a position similar to Williams']." *Matter of Y-L-, A-G-, R-S-R*, 23 I. & N. Dec. at 283.

Third, Williams claims the IJ erred in relying on *Matter of Y-L-, A-G-, R-S-R* as evidence that no one from Jamaica can ever establish a Convention Against Torture

7

Claim. Williams points to no language in the IJ's decision that supports this claim, and, as a result, we find this claim lacks merit.

Fourth, Williams claims the IJ did not appropriately consider his individual circumstances, such as the specific harm that he feared, whether that harm would occur at the hands of a government actor, or whether the harm he feared would accomplish an illicit end. We find the IJ's decision replete with references to Williams' specific situation. The IJ specifically notes Williams' fear of being killed by Graham, his fear of being harmed or not protected by the police, and the basis for Williams' fear (i.e., his cooperating with law enforcement authorities in the U.S. against Graham). Overall, there is nothing in the IJ's decision that suggests the IJ did not fully understand or consider Williams' unique circumstances.

Fifth, Williams explains that he was shot in 2005 when he was returned to Jamaica and that the Jamaican government has not sufficiently investigated this shooting. This evidence, he claims, proves the IJ's analysis of his torture claim was flawed. Under 8 U.S.C. § 1252(b)(4)(A), however, we are not able to consider this additional evidence, as our review is limited to the administrative record of this case. *McAllister v. Attorney General*, 444 F.3d 178, 190 (3d Cir. 2006).

Sixth, Williams claims the IJ failed to address the possibility of Williams being tortured while detained by the Jamaican government, a practice condemned in *Senathirajah v. I.N.S.*, 157 F.3d 210 (3d Cir. 1998). The IJ explicitly addresses this

8

specific possibility twice in his decision: First, he states, "there is no evidence respondent would be held in detention upon arrival." App. at 33. In support of this statement, the IJ discusses and attaches two exhibits to his decision. These exhibits explain that deportees are not detained for long periods upon returning. Second, he states, "there's still no evidence the government of Jamaica would likely torture the respondent while under its custody or physical control." *Id*. In support of this second statement, the IJ cites the Attorney General's decision in *Matter of Y-L-, A-G-, R-S-R*. In sum, Williams' characterization of the IJ's decision with respect to torture during detention is unsupported.

Finally, Williams claims the evidence he submitted, which included a newspaper article, a report from Amnesty International, and a report of the State Department, demonstrates the corruption of the Jamaican police and the willingness of the Jamaican government to turn a blind eye to the torture of its citizens. He claims this evidence, even when weighed against the various State Department reports relied upon by the IJ and cited by the Attorney General in *Matter of Y-L-, A-G-, R-S-R*, should compel us to find it is more likely than not that he will be tortured with the acquiescence of the Jamaican government. Stated differently, Williams claims he met his burden of proof. Because this claim involves a "factual or discretionary determination[]," we lack jurisdiction to consider it. *Sukwanputra*, 434 F.3d at 634.

*B. Williams as a National*

9

Williams claims he is not subject to removal because he is a national of the United States. This status, he says, resulted from his expressing allegiance to the United States by filing an application for naturalization. As a result, he asserts the Executive Office for Immigration Review has no jurisdiction under the Immigration and Nationality Act to order his removal.

As we explained in *Salim v Ashcroft*, 350 F.3d 307, 310 (3d Cir. 2003), "simply filing an application for naturalization does not prove that one 'owes a permanent allegiance to the United States.'" And, for one who is a citizen of another country, "nothing less than citizenship will show 'permanent allegiance . . . .'" *Id*. Applying this holding to the facts in Williams' case, we find he is not presently a national. In addition, given his multiple drug-related convictions, he is permanently ineligible for citizenship. *See id*. (citing 8 U.S.C. § 1427(a)(3), which requires applicants for naturalization to be of good moral character, and 8 U.S.C. § 1101(f)(7), (8), which provides a person who has served 180 days or more of imprisonment or has been convicted of an aggravated felony cannot be found to be of good moral character). For these reasons, we reject Williams' claim that he is a national and not subject to the jurisdiction of the Executive Office for Immigration Review.

## C. The "State-Created Danger Exception"

Finally, Williams argues the U.S. government has an affirmative duty to protect him because the risk of his being tortured arises from the assistance he provided to federal

10

prosecutors.

Generally, the state has no obligation to protect individuals from harm inflicted by third parties. *See DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998 (1989). However, as this Court explained in *Kamara v. Attorney General*, "we have recognized a 'state-created danger exception,' such that the government has a constitutional duty to protect a person against injuries inflicted by a third-party when it affirmatively places the person in a position of danger the person would not otherwise have faced." 420 F.3d at 216.

Despite Williams' contentions, *Kamara* explicitly declined to recognize the state-created danger exception in the immigration context. This Court determined that extending the exception in this way, "would impermissibly tread upon the Congress' virtually exclusive domain over immigration, and would unduly expand the contours of our immigration statutes and regulations, including the regulations implementing the [Convention Against Torture]." *Id*. at 217-18. Based on this precedent, we reject Williams' claim for relief under the state-created danger exception.

IV.

We have considered all other arguments made by the parties on appeal, and conclude that no further discussion is necessary. For the foregoing reasons, Williams' petition for review will be denied.

11