**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———————

Nos. 11-2838 & 11-3647
———————

JOSE ANTONIO CABRERA SANTANA,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

———————————————————————

On Petitions for Review of Orders of the
Board of Immigration Appeals
(Agency No. A094-222-583)
Immigration Judge: Honorable Mirlande Tadal

———————————————————————

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 16, 2012

Before: SLOVITER, GREENAWAY, JR. and COWEN, Circuit Judges

(Opinion filed: May 17, 2012)
———————

OPINION
———————

PER CURIAM

Jose Antonio Cabrera Santana ("Santana") petitions for review of two decisions

issued by the Board of Immigration Appeals ("BIA"). The two petitions have been

consolidated and, for the reasons that follow, will be denied.

I.

Santana, a native and citizen of the Dominican Republic, entered the United States in 1991. In June 2000, he pleaded guilty in the United States District Court for the Southern District of New York to conspiracy to distribute and possess with intent to distribute cocaine base. In September 2003, the District Court sentenced him to time served and three years' supervised release.

In June 2010, the Department of Homeland Security initiated removal proceedings against Santana, alleging that he was removable on the following bases: (1) as an alien present in the United States without having been admitted or paroled, see 8 U.S.C. § 1182(a)(6)(A)(i); (2) as an alien who a consular officer or the Attorney General knows or has reason to believe is or has been an illicit trafficker in a controlled substance or is or has been a knowing aider, abettor, assister, conspirator, or colluder with others in the illicit trafficking of a controlled substance, see 8 U.S.C. § 1182(a)(2)(C); and (3) as an alien convicted of a controlled substance offense, see 8 U.S.C. § 1182(a)(2)(A)(i)(II). At a master calendar hearing in September 2010, Immigration Judge ("IJ") Andrew Arthur determined that Santana was removable on all three grounds, and that Santana's drug conviction constituted an aggravated felony under 8 U.S.C. § 1101(a)(43)(B). At that same hearing, Santana applied for relief under the Convention Against Torture ("CAT").

In February 2011, IJ Mirlande Tadal (hereinafter "the IJ"), to whom Santana's case had been reassigned, held a hearing on the merits of his application. Santana testified that, following his arrest in 2000, he cooperated with federal authorities by

providing information about the narcotics activities in which he had been involved. Three other individuals who he claimed had been involved in those activities — "E," "Phobio,"[1] and "Cabo" — left for the Dominican Republic after learning of his cooperation. When Santana was released from prison in 2003, his friend Prieto, who had visited the Dominican Republic two months earlier, told him that E had threatened Santana. About six months before the merits hearing, Santana learned that Cabo had threatened him as well. Santana testified that, if he returned to the Dominican Republic, the police there would be unable to protect him, and that E, Phobio, or Cabo would kill him.

At the end of the merits hearing, the IJ denied Santana's CAT application. As a preliminary matter, the IJ determined that, because Santana's conviction constituted a "particularly serious crime" under 8 U.S.C. § 1231(b)(3)(B)(ii), he was eligible only for *deferral* of removal under the CAT (as opposed to *withholding* of removal). The IJ went on to conclude that such relief was not warranted. Although the IJ did not question Santana's credibility, the IJ found that Santana had not "submit[ted] any document to corroborate his claim." (J.A. at 25.) The IJ further found that Santana had failed to demonstrate (1) that he would more likely than not be singled out and targeted in the Dominican Republic, and (2) that the government there would acquiesce to any efforts to torture him.

---

[1] This spelling represents the phonetic spelling set forth in the hearing transcript. Santana's CAT application referred to an individual named "Fulvio," and his opening

On appeal, Santana challenged only the IJ's denial of deferral of removal (he did not contest the IJ's "particularly serious crime" finding). In June 2011, the BIA upheld that denial, concluding that Santana's claim was "too speculative":

> [Santana's] involvement with "Phobio" and "E" occurred more than 10 years ago in 1999 and 2000. [Santana] has never personally been threatened by them, but has just heard second-hand threats. [He] speculates that if he is returned to the Dominican Republic he will be placed on probation for 6 months, but he has not adequately explained how he would be tracked down in a country of 9 million people. It is not even clear that both of [his] former co-conspirators are still alive. [Santana] has failed to establish that it is more likely than not that he will be subjected to torture at the hands of his former co-conspirators.

(Id. at 14 (citations omitted).)

The BIA further concluded that, even if Santana had shown that it was more likely than not that his former co-conspirators would torture him, he still had failed to establish that the government in the Dominican Republic would acquiesce to this torture. In support of this conclusion, the BIA stated that

> [a]lthough [Santana's] testimony and the background materials in the record clearly reflect that police corruption is a problem in the Dominican Republic, the documents also indicate that the government is seeking to control the problem. Civilian authorities generally maintained effective control of the security forces. Police improvements in oversight, awareness, and accountability led to a perception that the police were making efforts to reduce incidents of physical abuse. Police officers were fired or prosecuted when found to have acted outside of established police procedures,

brief claims that Phobio and Fulvio are one and the same.

4

and the Internal Affairs Unit effectively investigated charges of gross misconduct by members of the National Police.

(Id. (internal quotation marks and citations omitted).)

Santana timely petitioned this Court to review the BIA's decision; that petition was docketed at C.A. No. 11-2838. A few weeks after filing that petition, Santana moved the BIA to reopen his removal proceedings. In support of that motion, he submitted five "internet articles," arguing that this material was previously unavailable and material to his CAT claim. In September 2011, the BIA denied the motion, stating that

> [Santana] has provided 5 articles addressing the Dominican Republic's investigation of various drug dealers, the struggles of the Dominican Republic's anti-corruption agency, and treatment of returning deportees. Notwithstanding these articles, we find no reason to disturb our prior decision. . . . We find that [Santana's] proffered articles, like the articles previously introduced, illustrate that while police corruption is a problem in the Dominican Republic, the government is seeking to control the problem rather than willfully ignoring it. Moreover, even if the articles which mention "Fulvio" refer to the same man [Santana] encountered in 1999 and 2000, we still find [Santana's] claim speculative inasmuch as the articles illustrate only that Fulvio was arrested and his home searched but do not, in any way, address [Santana] or his claim. As such, we do not find this evidence material, and we find no reason to remand the record for further proceedings regarding [Santana's] claim under CAT.

(Id. at 9 (citations, footnote, and certain internal quotation marks omitted).)

Santana subsequently filed another timely petition for review, this time challenging the BIA's denial of reopening. This new petition was docketed at C.A. No.

5

11-3647. The Clerk has consolidated Santana's two petitions, and they are now ripe for disposition.

II.

Since Santana is removable on the basis of his having been convicted of a controlled substance offense, our jurisdiction is limited to reviewing constitutional claims and questions of law. See 8 U.S.C. § 1252(a)(2)(C)-(D); Leslie v. Att'y Gen. of the U.S., 611 F.3d 171, 174 (3d Cir. 2010). This jurisdiction "includes review of the BIA's application of law to undisputed fact." Singh v. Gonzales, 432 F.3d 533, 541 (3d Cir. 2006). Having outlined the scope of our review, we now examine the claims raised in support of Santana's petitions.

Santana presents three overarching arguments in support of his challenge to the BIA's decision upholding the IJ's denial of CAT relief. First, he argues that the agency erred in failing to apply the three-part test for determining whether it is reasonable to expect corroboration in support of an alien's claims, see Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001) (articulating this three-part approach), and that, as a result, the case should be remanded so that this test may be applied. Although the IJ did find that Santana had failed to corroborate his claim, we do not read the BIA's decision as upholding the IJ's denial of CAT relief based on a lack of corroboration. Indeed, the BIA makes no mention of corroboration in its decision. Instead, it concluded that the alleged threat of torture against Santana was simply too speculative, and that, even if he had established that he was likely to be tortured, the record did not show that the government

6

in the Dominican Republic would acquiesce to any such torture. Accordingly, there is no need to remand this matter for application of the three-part <u>Abdulai</u> test.

Santana's second argument is that we cannot meaningfully review the BIA's decision because the BIA "failed to apply the three-part [<u>Abdulai</u>] test and failed to explain why Mr. Santana did not meet his burden of proof." (Pet'r's Opening Br. 34.) This claim is meritless. As indicated above, the BIA did not base its decision on a lack of corroboration and, as a result, did not need to conduct the three-part <u>Abdulai</u> test. Additionally, the BIA *did* explain, in clear terms, why he had failed to satisfy his burden of proof under the CAT, thereby enabling us to meaningfully review its decision.

Santana's third argument is that the BIA engaged in impermissible factfinding when it stated, in the context of concluding that he had not shown that he would likely be tortured, that it was not clear whether his former co-conspirators were still alive. We need not decide whether this statement amounts to impermissible factfinding because, independently from its conclusion on the likelihood of torture, the BIA concluded that Santana had not established that the government in the Dominican Republic would acquiesce to any efforts to torture him. Since this latter conclusion, which is a sufficient basis for rejecting his CAT claim, <u>see</u> <u>Gomez-Zuluaga v. Att'y Gen. of the U.S.</u>, 527 F.3d 330, 349 (3d Cir. 2008), is not undergirded by the alleged improper factfinding, we need not disturb the BIA's decision.

We now turn to the BIA's decision denying reopening. Santana argues that, in reaching this decision, the BIA "applied an erroneous legal standard by failing to

consider material evidence required by regulation and case law." (Pet'r's Reply Br. 12.) We disagree. Contrary to his claim, the BIA's decision indicates that it indeed considered the five articles that he submitted in support of his motion; the BIA simply concluded that these articles were not material.

To the extent Santana takes issue with the BIA's materiality determination, we conclude that such a challenge lacks merit. For newly submitted evidence to be deemed "material," it must be "of such a nature that the [BIA] is satisfied that if proceedings before the immigration judge were reopened . . . the new evidence offered would likely change the result in the case." Matter of Coelho, 20 I. & N. Dec. 464, 473 (BIA 1992). We agree with the BIA that this "heavy burden," see id., was not satisfied in this case, for the five articles submitted in support of Santana's motion to reopen would not likely change the agency's determination that he had failed to establish that the government in the Dominican Republic would acquiesce to efforts to torture him. Although one of the articles cites to an anticorruption official's criticisms of the Dominican Republic's justice system, three of the other articles document the country's authorities' efforts to curb the criminal activity of individuals who appear to be the very men Santana fears. Specifically, those articles collectively state that the authorities: (1) arrested a man named Fulvio Moya, who, according to Santana, is "Phobio"; (2) seized weapons, drugs, and other items from Moya's apartment; and (3) held, for investigative purposes, the vehicle of an "El Cabo" — Santana claims that this is the "Cabo" he fears — who had jumped out of the vehicle and fled after the authorities ordered him to stop. As for the fifth and

8

final article, which states, inter alia, that individuals deported to the Dominican Republic for having committed felonies are monitored by the police for six months, that article does not bear on the issue of whether the government in the Dominican Republic would acquiesce to torture.

In light of the above, we find no reason to disturb either of the BIA decisions at issue here. Accordingly, we will deny both of Santana's petitions for review.