# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-3723

_____

Infogroup, Inc., Delaware Corporation

*Plaintiff - Appellee*

Inc. InfoUSA, Delaware Corporation; InfoUSA Marketing, Inc., Delaware corporation

*Plaintiff*s

v.

DatabaseLLC, a Nevada limited-liability company, doing business as
Database101.com, doing business as Infofree.com, doing business as AtoZ Databases

*Defendant*

Vinod Gupta

*Defendant - Appellant*

Blake Van Gilder; Jason Dailey; Mark Puljan; Jon McCormick; John Does, 1-20

*Defendant*s

DatabaseUSA.com LLC, a Nevada limited-liability company, doing business as
Database101.com, doing business as Infofree.com, doing business as AtoZ Databases

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: February 13, 2020
Filed: April 27, 2020

_____

Before LOKEN, BENTON, and KELLY, Circuit Judges.

_____

BENTON, Circuit Judge.

After a jury trial and post-trial orders by the district court,[1] Infogroup, Inc. received judgments against DatabaseUSA.com LLC for copyright infringement, and Vinod Gupta for breach of contract. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

Gupta founded Infogroup, a company that compiles a database of business information. In 2008, Gupta and Infogroup entered a separation agreement. Within two years, he founded DatabaseUSA to compile a database of business information.

In 2014, Infogroup sued DatabaseUSA for, among other claims, copyright infringement of its 2011 database. It also sued Gupta for breach of the separation agreement. A jury returned a verdict for Infogroup, which after post-trial orders, awarded $11.2 million against DatabaseUSA for copyright infringement, and $10 million against Gupta for breach of the separation agreement.

DatabaseUSA and Gupta appeal. They seek judgment as a matter of law, or in the alternative, a new trial.

---

[1] The Honorable John M. Gerrard, Chief United States District Judge for the District of Nebraska.

This court reviews de novo a motion for judgment as a matter of law. ***Andreas v. Volkswagen of Am., Inc.***, 336 F.3d 789, 795 (8th Cir. 2003). "Only where all of the evidence points in one direction and is susceptible to no reasonable interpretation supporting the jury verdict should the [denial] of a motion for judgment as a matter of law be [reversed]. Thus, it is improper to overturn a jury verdict unless, after giving the nonmoving party the benefit of all reasonable inferences and resolving all conflicts in the evidence in the nonmoving party's favor, there still exists a complete absence of probative facts to support the conclusion reached so that no reasonable juror could have found for the nonmoving party." ***First Nat'l Bank of Omaha v. Three Dimension Sys. Prod., Inc.***, 289 F.3d 542, 544 (8th Cir. 2002) (citation, emphasis, and quotations omitted).

This court reviews a denial of a new trial for a clear abuse of discretion. ***McKnight by Ludwig v. Johnson Controls, Inc.***, 36 F.3d 1396, 1400 (8th Cir. 1994). "The key question is whether a new trial should have been granted to avoid a miscarriage of justice." ***Id.***

## I.

For the copyright-infringement decision, this court does not grant a judgment as a matter of law or a new trial to DatabaseUSA.

To prevail on copyright infringement, Infogroup must prove, first, "ownership of a valid copyright," and second, "copying of original elements of the work." ***Mulcahy v. Cheetah Learning, LLC***, 386 F.3d 849, 852 (8th Cir. 2004), *citing* ***Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.***, 499 U.S. 340, 361 (1991).

For the first requirement, DatabaseUSA argues that Infogroup does not own a valid copyright because its database is a compilation of facts, not the result of creativity. As DatabaseUSA sees it, Infogroup's copyright revives the now-

discredited "sweat of the brow" theory that hard work alone merits copyright protection. *Feist Publ'ns, Inc.*, 499 U.S. at 353 ("'Sweat of the brow' courts thereby eschewed the most fundamental axiom of copyright law—that no one may copyright facts or ideas.").

"[C]opyright in a factual compilation is thin." *Id.* at 349. It protects the "selection and arrangement [of facts], so long as they are made independently by the compiler and entail a minimal degree of creativity." *Id.* at 348 (brackets added). *See also **Schoolhouse, Inc. v. Anderson***, 275 F.3d 726, 728-29 (8th Cir. 2002) ("As applied to a factual compilation, copyright law protects an author's original selection and arrangement of facts, but the facts and ideas within the compilation are free for the taking.").

A reasonable juror could have concluded that Infogroup made an independent selection and arrangement of facts that entail a minimal degree of creativity. Infogroup put into evidence its copyright's Certificate of Registration from 2011, which protected the "text, Compilation" of its database. Certificates of Registration are "entitled to a rebuttable presumption of the validity of [the] copyright[]." ***Taylor Corp. v. Four Seasons Greetings, LLC***, 315 F.3d 1039, 1042 (8th Cir. 2003), *citing* **17 U.S.C. § 410(c) (2002)**. *See also **Warren Publ'g, Inc. v. Microdos Data Corp.***, 115 F.3d 1509, 1513 n.4 (11th Cir. 1997) (acknowledging protection for factbook "as a whole" due to its certificate of registration). DatabaseUSA did not submit evidence rebutting this presumption. Infogroup, according to its CEO and its group president, merges overlapping data and purges inaccurate data (in its judgment). This process entails a minimal degree of creativity. *See **Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc.***, 893 F.3d 1176, 1185 (9th Cir. 2018) (providing copyright protection where "employees choose from multiple and sometimes conflicting sources, and they use their judgment in selecting which names and addresses to include in the database").

DatabaseUSA counters that Infogroup did not establish that its database entailed creativity because it did not put into evidence its entire database. Infogroup's database might have been additional evidence about the exercise of creativity, but it was not necessary. A reasonable juror, based on the evidence at trial, could have found Infogroup owned a valid copyright.

For the second requirement, a reasonable juror could have concluded that DatabaseUSA copied the original elements of Infogroup's work. "Copying may be established (1) by direct evidence or (2) by showing that the defendants had access to the copyrighted materials and showing that substantial similarity of ideas and expression existed between the alleged infringing materials and the copyrighted materials." *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 731 (8th Cir. 2006). For factual compilations, it takes "virtually extensive verbatim copying to constitute infringement." *Schoolhouse*, 275 F.3d at 729 (citations and quotation omitted).

Infogroup presented direct evidence for the jury's finding that DatabaseUSA copied. First, a salesperson who worked for Infogroup and DatabaseUSA testified that the top executives at DatabaseUSA told him that "[n]othing has changed" between Infogroup's data and DatabaseUSA's data. *See Rottlund*, 452 F.3d at 732 (listing party admissions as direct evidence). Second, DatabaseUSA's database contained Infogroup's "seed data"—fake data in Infogroup's database to detect copying. *See id.* (listing common errors as direct evidence).

Third, the district court gave a spoliation instruction that the jury could "infer . . . that the contents of the database were unfavorable" to DatabaseUSA if it found "that DatabaseUSA destroyed the database knowing that evidence would be relevant to an issue being litigated in this case." This instruction implemented the district court's sanction of DatabaseUSA for intentionally destroying its 2014 database after DatabaseUSA reviewed it to oppose Infogroup's preliminary injunction in this case. *Cf. id.* (listing party admissions as direct evidence). Spoliation, with the other

evidence, was sufficient to prove copying.  *See **Swift Transp. Co. of Ariz., LLC v. Angulo***, 716 F.3d 1127, 1134 (8th Cir. 2013) (holding that spoliation of tracking data could, with other evidence, support reasonable inference defendant's truck at scene).

Because of spoliation, DatabaseUSA's two arguments against copying fail. One, DatabaseUSA believes Infogroup needed to submit its database for a side-by-side comparison.  But here, DatabaseUSA's spoliation prevented a comparison.  *Cf. **General Universal Sys., Inc. v. Lee***, 379 F.3d 131, 142 (5th Cir. 2004) (requiring side-by-side comparison where defendant did not destroy computer program); ***Antonick v. Elec. Arts, Inc.***, 841 F.3d 1062, 1066 (9th Cir. 2016) (same, for source code).  Relatedly, DatabaseUSA argues that—regardless whether its database was available—Infogroup needed to submit its entire November 2011 database.  But this argument carries no weight due to DatabaseUSA's spoliation:  Infogroup's entire database could not have been compared with anything.  Two, DatabaseUSA contends that Infogroup showed copying of only its facts in DatabaseUSA's database.  The spoliation instruction, with the other evidence, permitted the jury to infer that DatabaseUSA's database contained the original elements from Infogroup's database, not just the facts.  *See **Schoolhouse***, 275 F.3d at 728-29 (stating standard).

Finally, for the copyright infringement claim, this court affirms the $11.2 million in damages.  "[A] copyright holder is entitled to recover his actual damages as well as 'any profits of the infringer that are attributable to the infringement and are not taken into account in computing actual damages.'" ***Andreas v. Volkswagen of Am., Inc.***, 336 F.3d 789, 795 (8th Cir. 2003), *quoting* **17 U.S.C. § 504(b) (2000)**.

The district court trimmed the jury's award from $39.6 million to $11.2 million. The $39.6 million, according to Infogroup's CFO, was DatabaseUSA's revenue from 2011 to 2018, after deducting overlap and commissions.  The court then subtracted the revenues after 2014, the last time Infogroup provided evidence of infringement.

DatabaseUSA attacks the award as first, relying on overlapping data from databases after 2011, and second, including revenue from a separate database. These arguments are misplaced. "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and *the infringer* is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." **17 U.S.C. § 504(b)** (emphasis added). Infogroup presented evidence (verified by DatabaseUSA) of DatabaseUSA's gross revenue from the sales divisions that used the infringing database, and evidence of two deductions. At trial, DatabaseUSA did not present *any* evidence that its gross revenue resulted from factors unrelated to infringement.

This court affirms the award for copyright infringement.

II.

Leaving Infogroup, Gupta signed a separation agreement with non-disparagement, confidentiality, and non-compete clauses. In return, he received $10 million, indemnification protections, and a year of health insurance coverage.

Infogroup proved breach of the agreement. For non-disparagement, it submitted evidence Gupta told a reporter, "The problem with Infogroup is they cannot compete in the marketplace. They have no leadership, no brains and their product is obsolete." Gupta argues that these comments, made while DatabaseUSA was in litigation with Infogroup, fell under the non-disparagement clause's exception for "comments made during legal or administrative investigations or proceedings." A juror could reasonably interpret the exception to apply to statements "during" actual legal "investigations or proceedings"—that is, related to investigations or proceedings—but not to comments to a reporter while litigation is ongoing. It was reasonable, therefore, to conclude that Gupta's comments violated the non-disparagement clause.

For breach of the confidentiality clause, Infogroup submitted evidence that Gupta told his salesman he was using Infogroup's customer lists, and evidence that he used its trademarks. Gupta asserts that Infogroup's customer lists and trademarks were not protected by the confidentiality clause—a term the jury found Gupta breached. The clause prohibited "use" of "highly sensitive and proprietary information regarding [Infogroup's] . . . intellectual property (including, but not limited to . . . trademarks) [and] customers." The jury reasonably concluded that Gupta's acts violated this clause.

Finally, Gupta attacks the $10 million award because the separation agreement also had a non-compete clause, which Gupta did not violate. As he sees it, $10 million in damages is not sufficiently related to the breach because the non-compete clause must have some value.

The district court instructed the jury that "the measure of damages for a breach of a contract claim is an amount that would place Infogroup in as good a position as it would have enjoyed if the contract had been performed." The parties agree this instruction was proper. *See Bachman v. Easy Parking of Am., Inc.*, 562 N.W.2d 369, 373 (Neb. 1997) ("The proper measure of damages in a contract action is the losses sustained by reason of a breach."). *See also Sack Bros. v. Great Plains Coop., Inc.*, 616 N.W.2d 796, 809 (Neb. 2000) (there must be "a causal relationship between the damages asserted and the breach relied upon"). Neither party sought an instruction for rescission.

The jury had a sufficient basis for its damages amount. *See Lange Indus., Inc.. v. Hallam Grain Co.*, 507 N.W.2d 465, 478 (Neb. 1993). Although Infogroup submitted conflicting amounts, a reasonable juror could have credited Infogroup's CFO's testimony that $10 million would make Infogroup whole. Gupta received more than $10 million, including the indemnification and health insurance protections.

The district court properly denied Gupta a judgment as a matter of law or a new trial.

* * * * * * *

The judgment of the district court is affirmed.

_____